**FLAKICE CORPORATION (DELAWARE) et al. v. SHORT.**

**No. 70.**

Circuit Court of Appeals, Second Circuit.

Nov. 18, 1940.

Daniel L. Morris and J. F. X. Finn, both of New York City (Blair, Curtis & Hayward, Edward G. Curtis, and Charles C. Ladd, all of New York City, on the brief), for plaintiffs-appellees.

John M. MacGregor and William R. Glisson, both of New York City (Howard W. Dix, of New York City, on the brief), for defendant-appellant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The defendant Short became associated in 1924 with several individuals, including Field, now president of both plaintiff corporations, who were then concerned, as the Chemical Machinery Construction Company, in the development and exploitation of several devices of Field's invention, particularly those having to do with the manufacture, handling, and use of small or fragmented ice. Short was employed by the Company at a fixed salary as an engineer and inventor under a contract whereby he bound himself to "assign to this company all property rights in any inventions" which he might make "connected with the work of this company or its assignees." Thereupon he became operating head of the business, and continued work on several projects, of which one, a device for making ice and disengaging it in fragments from a flexible member, showed real promise of commercial value. In 1928, one Bridgeford, an outsider, was induced to become interested and to contribute $50,000 to the enterprise, and Flakice Corporation (New Jersey), one of the plaintiffs, was organized to expand operations and to effect a redistribution of the interests of the various parties. Short became party to a written agreement between himself, each of his old associates, Bridgeford, and the Corporation, by which his old contract was abrogated, he was granted 5 per cent of the Flakice stock, and he agreed to continue his same work with the new corporation. Ostensibly for the protection of each of the parties, and particularly of Bridgeford, the following provision was included: "Fourth: Field, Gray, Flowers and Short agree that so long as any one of the four is actively engaged in operating the business, each of them will give, grant, set over and assign to the Company, without any further or additional consideration, all past, present and future inventions of each of them jointly or severally, in any way relating to the same field or subject matter of the patents and applications now owned by the Company, or tending in any way to improve the same or to achieve similar objects in a similar way."

By 1931, there was need for additional capital, which was obtained by organizing Flakice Corporation (Delaware), the other plaintiff, and issuing paid-up shares of its stock to Field and Short in exchange for three patent applications, Field and Short agreeing to return this stock to the Corporation for future sale. In this agreement there was substantially the same provision as that found in the 1928 agreement: that, as long as any of them remained interested in Flakice Corporation, they would assign to the Company all inventions "in the same field or in any way relating to the subject matter" of the

patents and applications held by the Company, "or tending in any way to improve the same or any of them, or to achieve similar objects in a similar way."

While working for the Company in 1934 on a modification of the Flakice machine suitable for use by the Borden Company for freezing milk, Short conceived a new method by which liquids might be frozen on a stationary surface and removed by a chipping action. He developed this method during the remainder of that year and the first half of the next, until he left the business in August, 1935, following a dispute with Field. Some time later Short applied for a patent on the Chipice machine in his own name, licensed the manufacture of it by the Frick Company, and refused to comply with the plaintiffs' demand to make an assignment thereof to them. The interlocutory decree from which this appeal is taken ordered the defendant to assign this invention to the plaintiff Flakice Corporation of Delaware (which had acquired all rights therein from the other plaintiff), declared defendant's attempted license of its manufacture void, with other incidental relief, and appointed a master to hear and report evidence as to plaintiff's damages.

The question thus presented is whether the Chipice machine is one "in any way relating to the same field or subject matter of the patents and applications" owned by the New Jersey company in 1928, or by the Delaware company in 1931, or "tending in any way to improve the same or to achieve similar objects in a similar way."

The generality of this language compels the conclusion that, even if the "field" and "subject matter" of the patents is conceded to be only small ice machinery of the Flakice type built around a flexible member for disengaging the ice, any other devices useful in the small ice business must be subject to its terms. Any means for producing small ice is commercially "related" to Flakice machinery, with which it would compete—a most important relation, indeed, presumably the one which to these parties as business men must have seemed essential. The purpose of this clause and of the agreement of Short, Field, and their associates to continue active with Flakice Corporation, found in the 1928 contract, was clearly to assure each party the support of the other, and to protect each against the competition of

the other. A construction which would make that assurance and protection conditional on the continued use of one particular mechanical element of one of the inventions involved would completely frustrate that purpose. Bridgeford, for one, could hardly be supposed to have invested his money in the enterprise in expectation of such an outcome.

Moreover, in addition to the language "in any way relating to" the field of the patents, there is language referring to "all past, present and future inventions" "tending * * * to achieve similar objects in a similar way," and obviously calculated to extend the protection even further. The objective of the Flakice enterprise may not have been so broad as to include general refrigeration, but it at least extends to all manufacture of small ice. A "similar way" of achieving that objective cannot mean exactly the same way, or only a way which would be covered by the invention of the Flakice machine itself; otherwise the protection of the clause would have been unnecessary. How different a small ice machine might be from the Flakice machine, and yet be similar to it, is suggested perhaps by the fact that Field and Short had always been interested in making small ice by quick-freezing of small volumes, as contrasted with the old method of slow-freezing blocks to be later cut and shattered. Of course, both the Flakice and Chipice machines are similar in that respect.

Moreover, the "field or subject matter" of the Flakice Corporations' patents cannot reasonably be limited to a machine employing a flexible member, flexed "to cause the solid to peel or flake off." Not only were there several applications and patents held by the companies in 1928 and 1931 on appliances for the handling or use of small ice instead of its manufacture—which defendant passes off as "accessory devices" and thus within the field—but also there were in 1931 applications on machines for making small ice in cubes to be ejected by plungers (such as Field Patent No. 2,054,074), and for producing "Mixtice" by dropping liquid carbon dioxide into water. If the words in question were used in such a narrow sense as defendant contends, then each of these devices mentioned occupies a different field, and the plural should have been employed to refer to "fields or subject matters" of all such patents. We think it is clear

that there was contemplated one field sufficiently broad to embrace all the patents then held. No field less than the small ice field itself would be thus broad and Short's Chipice machine unquestionably falls within that field.

That Short himself considered the machine to be company property was evidenced by his behavior with regard to its perfection: in using company employees and funds on the work, in sketching it in the company notebooks and including references to his development of it in his periodic written reports to Field, and in leaving the model with the Company on his departure.

Defendant's arguments to the contrary are not persuasive. In the main they amount to the single contention that the agreements would have expressly defined "field or subject matter" as that of small ice if such had been intended, or that they would have used the very broad language of the 1924 contract—"connected with the work of this company"—cancelled by the 1928 contract, if such a scope had been desired. This point really proves nothing more than that the parties' intentions might have been more clearly expressed, which may be granted. To the contrary may also be noted the fact that an agreement between Short and the old Chemical Company associates reached July 4, 1928, which was a preliminary step in the organization of Flakice Corporation, required them to assign only those inventions "having to do with Flakice," but that the formal agreement twenty-one days later between the same parties, Bridgeford, and Flakice Corporation, although following the July 4 agreement in many respects, discarded that comparatively clear and limited definition for the broad and general language discussed above.

Plaintiffs advance the alternative grounds of an oral contract, and a contract implied from the nature of Short's employment, on both of which the court below found in their favor, against the defendant's objection that the written contracts must necessarily supplant all other arrangements between the parties. Our conclusion that defendant is bound by his written contracts to relinquish his Chipice invention to his former employers renders unnecessary consideration of these respective claims.

This is a woefully long record; of the 1,500-odd pages, two-thirds are devoted to written documents, a large number of which should have been either omitted or merely summarized. Both sides seem to have been at fault. No costs will be taxed on this appeal. Federal Rule 75(e), 28 U.S.C.A. following section 723c.

Judgment affirmed.